■ KENNETH SCHILLER et al., Respondents, v COMMUNITY TECHNOLOGY, INC., Appellant, et al., Defendant.—Order unanimously affirmed, with costs. Memorandum: It is alleged in plaintiffs' complaint that on April 20, 1973 plaintiffs purchased a condominium from PRG Enterprises, Inc., pursuant to a written contract, called a purchase agreement and offering plan; that on December 28, 1975 a fire erupted in the living room area of their residence; that the source of the fire was an electric duplex outlet box and the electric wiring attached to it; that defendants had installed and wired the electric duplex outlet boxes pursuant to a contract with PRG; that the electric service and duplex outlet box was defective and dangerous when it was manufactured, assembled and/or installed; that defendants failed to perform the wiring and installation in a reasonably safe manner; and that defendants failed to warn plaintiffs of the hazardous condition. Plaintiffs seek $25,000 in damages. Plaintiffs' insurance carrier has paid its insureds' damages and the carrier brings this action as subrogee. Defendant Community Technology, Inc., appeals from an order denying its motion to dismiss the complaint, contending that the subrogee of plaintiffs may not maintain an action in negligence and strict products liability against the general and electrical contractors of the condominium property for damages sustained by the condominium owner when a fire damages his property. Appellant claims that the action is barred by provisions in the offering plan, which required plaintiffs to secure waivers of subrogation rights in their insurance policies. Appellant contends that plaintiffs breached their contract by purchasing a fire insurance policy without such a waiver and that the insurer may not take advantage of plaintiffs' breach by instituting this subrogation

action. The determination of the motion rests upon our interpretation of the admittedly ambiguous provisions of the offering plan. The contested provisions provide: "All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro-rata liability of the insurer as a result of any insurance carried by Home Owners or of the invalidity arising from any acts of the insured or any Home Owners and shall provide that such policies may not be cancelled or substantially modified without at least ten (10) days prior written notice to all of the insureds, including all mortgagees of Homes. Duplicate originals of all policies of physical damage insurance and of all renewals thereof, together with proof of payment of premiums shall be delivered to all mortgagees of Homes at least ten (10) days prior to expiration of the then current policies * * * Home Owners shall not be prohibited from carrying other insurance for their own benefit provided such policies contain waivers of subrogation and further provided that the liability of the carriers issuing insurance procured by the Board of Managers shall not be affected or diminished by reason of any Home Owner's other insurance." Preliminarily, some general observations are in order. Most condominiums are insured not only by a master policy, covering the entire project, but also by policies covering the individual units. The master policy not only protects the over-all needs of the project, but it also guards against gaps in individual insurance contracts caused by lapsed policies or limited coverage (1 Rohan & Reskin, Condominium Law and Practice, § 11.02[2]). New York provides for master policies by statute specifically authorizing a condominium declaration to require its board of managers to insure the project, "without prejudice to the right of each unit owner to insure his own unit for his own benefit" (Real Property Law, § 339-bb). The additional unit owner coverage permitted is beneficial to protect personal property and any unusually expensive alterations the unit owner may have made. The idea behind using both types of insurance is to provide coverage for the project as a whole, as well as for the individual unit owners. Of course, the use of various individual policies increases the risk that subrogation rights will be asserted by one of the insurers against a unit owner because the physical proximity and interdependence of the units makes it likely that damage from fire will extend beyond any one unit (1 Rohan & Reskin, Condominium Law and Practice, § 11.05[3]). Obviously, subrogation in this situation is undesirable because it jeopardizes the collective resources. Viewing the condominium as a whole, there would in effect be no insurance if subrogation were permitted, since the loss would ultimately fall on the careless unit owner. Thus, the particular insurance needs of condominium owners suggest that the required waivers were designed to operate only with respect to subrogation claims brought against other condominium unit owners. We examine the provisions of the offering plan against this background. Initially, the offering plan requires the board of managers to maintain insurance on the project and each individual unit. Also, it permits the home owners to purchase their own insurance. It is further provided that both types of policies shall "contain waivers of subrogation." Although the offering plan does not specify to whom the waivers must extend, the reasons for waiving subrogation rights only apply to potential claims against other unit owners (see, also, Uniform Condominium Act [UCA], § 3-112, which specifically requires condominium master insurance policies to contain waivers of subrogation "against any unit owner of the condominium or members of his household"). The goal is to insure and protect the condominium owners, and that goal is satisfied without extending the waiver of subrogation to negligent third parties. Therefore,

we conclude that the offering plan did not require plaintiffs to secure waivers of subrogation rights with respect to claims against third parties, that plaintiffs have not breached their contract and that there is no basis for asserting that subrogation rights against appellant have been waived. This result is further supported by the general rule that a party will not be relieved by contract from the consequences of its own negligence unless the agreement relied upon makes it clear that such was the unmistakable intent of the parties (*Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 159; *Margolin v New York Life Ins. Co.,* 32 NY2d 149, 153; *Kurek v Port Chester Housing Auth.,* 18 NY2d 450, 456). Application of the general rule here would require a clear finding that the parties intended to exempt appellant from liability in this situation, and since the provision in the offering plan executed by the buyer and seller did not by its terms require a waiver of subrogation extending to contractors, it should not be construed as having that effect. (Appeal from order of Onondaga Supreme Court—dismiss complaint.) Present—Dillon, P. J., Cardamone, Simons, Callahan and Witmer, JJ.