[No. D053843. Fourth Dist., Div. One. Nov. 20, 2009.]

CITY OF CARLSBAD et al., Plaintiffs and Appellants, v.
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
Defendant and Respondent.

COUNSEL

Levine, Steinberg, Miller & Huver, Harvey R. Levine, Craig A. Miller; and Ronald R. Ball, City Attorney, for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Rebecca R. Weinreich and Stephen V. Kovarik for Defendant and Respondent.

OPINION

NARES, J.—This action arises out of a landslide that occurred as a result of the City of Carlsbad and the Carlsbad Municipal Water District's (together, the City) negligent maintenance of its water system, which caused a hillside to become saturated with water. The landslide resulted in damage to and the destruction of several condominium units within the City, and the City paid approximately $12 million to settle lawsuits brought by the homeowners. The City sought indemnity from its liability insurer, Insurance Company of the State of Pennsylvania (ISOP).

When ISOP denied coverage, the City sued, and the parties brought cross-motions for summary judgment. The court granted ISOP's motion, finding an exclusion that barred coverage for "any property damage arising out of land subsidence for any reason whatsoever" barred coverage for the property damage.

On appeal, the City asserts the court erred in granting summary judgment because (1) the exclusion is ambiguous as to whether it covers landslides regardless of the cause; (2) the exclusion does not apply to landslides caused by manmade forces; and (3) under the "efficient proximate cause" doctrine and Insurance Code[1] section 530, the City is entitled to indemnification. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Relevant Policy Language*

ISOP insured the City under two general liability policies. The policies covered losses resulting from bodily injury and property damage to third parties resulting from the City's negligence. The policies defined property damage as "[p]hysical injury to or destruction of tangible property, including all resulting loss of use of that property."

However, the policy also had a series of exclusions, including "Exclusion X," which provided, "[w]e will not defend or pay under this Policy for claims or suits against you: [¶] . . . [¶] For property damage arising out of land subsidence *for any reason whatsoever*." (Italics added.) The policy defined "land subsidence" as follows: "Land subsidence means the movement of land or earth, including, but not limited to, sinking or settling of land, earth movement, earth expansion and/or contraction, *landslide*, slipping, falling away, caving in, eroding, earth sinking, and earth rising or shifting or tilting." (Italics added.)

### B. *The Landslide*

The parties stipulated to the relevant facts. The La Costa de Marbella Condominium Complex (Marbella) is located in the City. In March 2005, as a result of the City's negligent maintenance and repair of a fire hydrant and water line located within Marbella, an earthen slope above Marbella became saturated with water and failed, resulting in a landslide that damaged or destroyed a total of 15 units and caused damage to the common areas.

---

[1] All further statutory references are to the Insurance Code.

The Marbella Homeowners Association, owners, and residents filed four lawsuits against, among others, the City, seeking damages for property damage to the complex and emotional distress suffered by the individuals. ISOP extended a defense to the City under a reservation of rights.

The City settled the lawsuits in the total amount of $12,670,000. ISOP indemnified the City for the bodily injury claims, but denied coverage for the property damage claims.

### C. *The Instant Action*

Following ISOP's denial of the City's request for indemnification, the City filed suit against ISOP, alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

The City and ISOP filed summary judgment motions, based upon the stipulated facts discussed, *ante*. The City asserted (1) under the "concurrent cause doctrine," that it was entitled to indemnification because the exclusion did not explicitly negate coverage where that damage resulted from more than one cause; (2) Exclusion X was illegal because it conflicted with section 530; and (3) Exclusion X did not apply to landslides caused by manmade forces. ISOP in turn argued (1) Exclusion X unambiguously barred coverage for all property damages arising out of the landslide; (2) the concurrent proximate cause doctrine was inapplicable because there were not two separate and independent acts of negligence that combined to cause the damages; and (3) even if the concurrent proximate cause doctrine applied, the exclusion still applied.

The court heard the motions together. The court denied the City's motion and granted ISOP's. In granting ISOP's motion, the court found (1) the concurrent proximate cause doctrine was inapplicable because there were not two independent negligent acts, one of which was covered by the policy, that caused the damages; (2) Exclusion X did not violate section 530 because, notwithstanding that statutory provision, perils may be excluded if they are clear and precise; and (3) Exclusion X unambiguously excluded coverage for landslides even if caused by the City's negligence.

### DISCUSSION

### I. *PRINCIPLES OF INSURANCE POLICY INTERPRETATION*

█ This court summarized settled contract interpretation principles applicable to insurance policies in *Palacin v. Allstate Ins. Co.* (2004) 119

Cal.App.4th 855, 861 [14 Cal.Rptr.3d 731]: "The fundamental rule [of contract interpretation] is that a court must give effect to the mutual intention of the parties when they formed the contract. [Citation.] This intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" . . . , controls judicial interpretation.' " (Quoting *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385] (*E.M.M.I.*); see also *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [33 Cal.Rptr.3d 562, 118 P.3d 589].)

Because no argument is made that extrinsic evidence is needed to interpret the policy language, interpretation of the policy language at issue here is a pure question of law for our independent review. (*E.M.M.I., supra,* 32 Cal.4th at p. 470; *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439 [204 Cal.Rptr. 435, 682 P.2d 1100]; see *Herzberg v. County of Plumas* (2005) 133 Cal.App.4th 1, 24 [34 Cal.Rptr.3d 588].)

## II. *ANALYSIS*

### A. *Plain Language of Exclusion X*

The City asserts ISOP should have afforded coverage because (1) the language of Exclusion X is ambiguous as to whether it covered land subsidence caused by the City's negligence and (2) Exclusion X does not apply to land subsidence caused by manmade forces. These contentions are unavailing.

■ Generally, coverage clauses are interpreted broadly, and exclusionary clauses are interpreted narrowly. (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704] (*Garvey*).) However, where the meaning of an exclusion clause is clear, it will be enforced. (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick* (1976) 17 Cal.3d 190, 195, fn. 4 [130 Cal.Rptr. 520, 550 P.2d 1056].)

We start our analysis by interpreting the language of the exclusion clause to determine the "plain meaning" a layperson would attach to the phrase any "damage arising out of land subsidence for any reason whatsoever." (*Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1214 [11 Cal.Rptr.3d 169].) In particular, we must focus on the term "for any reason whatsoever."

■ "From the earliest days of statehood we have interpreted 'any' to be broad, general and all embracing. In *Davidson v. Dallas* (1857) 8 Cal. 227,

239, this court declared the 'word "any" means every, and the expression "for these purposes or any of them" in effect reads: "for the foregoing purposes and every of them." ' [Citations.]" (*California State Auto. Assn. Inter-Ins. Bureau v. Warwick, supra*, 17 Cal.3d at p. 195.) Moreover, the term "reason" is synonymous with "cause." (See Webster's New World College Dict. <http://www.yourdictionary.com/reason> [as of Nov. 20, 2009] ["reason . . . [¶] 1. an explanation or justification of an act, idea, etc. [¶] 2. a cause or motive"].) Thus, the term "for any reason whatsoever" means "any *cause* whatsoever." The only reasonable interpretation of the exclusion clause is that it bars coverage for all property damage caused by the landslide, regardless of the cause. Accordingly, it matters not that the landslide was caused, as the parties stipulated, by the negligence of the City.

The City asserts that other policy exclusions addressed by case law are more "carefully drafted" and contain "unambiguous exclusionary language," while Exclusion X is "hopelessly unclear and incomplete." The City asserts the exclusion should have stated that land subsidence was not covered "regardless of cause" or "whether it occurs alone, jointly or in sequence with other causes."

■ However, just because language could be more precise or explicit does not mean it is ambiguous. (See *California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682, 1694 [56 Cal.Rptr.2d 434] [although "it might have promoted clarity" to state specifically that jet pump powered watercraft were excluded, there was no ambiguity in view of the plain language of the policy, which excluded all watercraft powered by inboard motors, without qualification based on their means of propulsion].) Further, as we have explained, *ante*, the clause *is* precise and explicit.

The City asserts Exclusion X does not apply to landslides that are caused by manmade forces, i.e., the City's negligent failure to maintain and repair its water system. In making this argument, the City points to the definition of "land subsidence" in the policy, which it argues references a list of "natural phenomena." However, the definition only refers to the types of *occurrences* that constitute land subsidence, including landslides, and does not reference, describe or limit what has *caused* those occurrences. That definition is then modified by the specific terms of Exclusion X, which excludes coverage for land subsidence "for any reason [i.e., cause] whatsoever." Thus, the plain language of Exclusion X applies to any causes, manmade, or otherwise.

B.  *Efficient Proximate Cause Doctrine/Section 530*

The City asserts that it is entitled to indemnification based upon case law applying the "efficient proximate cause" doctrine and section 530 because the

cause of the landslide and resulting damages was the City's negligent maintenance of its water system. We reject this contention.

■ Under the efficient proximate cause doctrine, " '[w]hen a loss is caused by a combination of . . . covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss,' but 'the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominate cause.' " (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 750 [27 Cal.Rptr.3d 648, 110 P.3d 903] (*Julian*).) Section 530 is a codification of the efficient proximate cause doctrine (*Julian, supra*, 35 Cal.4th at p. 750) and provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

■ However, as the City acknowledges, the efficient proximate cause doctrine is limited to first party cases, i.e., where an insured seeks coverage for damages to his or her own property interests. (*Garvey, supra*, 48 Cal.3d at pp. 398–399; *Julian, supra*, 35 Cal.4th at pp. 750, 753; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 6:135, p. 6A-36 (rev. # 1, 2008), ¶ 6:139, p. 6A-40 (rev. # 1, 2009).) In third party cases such as this, where the insured is seeking coverage for liability to a third party, the "concurrent proximate cause" doctrine applies. (*Garvey, supra*, 48 Cal.3d at pp. 398–399; see *Julian, supra*, 35 Cal.4th at pp. 750, 753.) Therefore, the first party cases applying the efficient proximate cause doctrine upon which the City relies are irrelevant to our analysis.

The City does not assert coverage is available under the concurrent proximate cause doctrine applicable to third party cases such as this. At any rate, that doctrine would not assist the City, as it only applies where there are " 'two negligent acts or omissions of the insured, one of which, independent[] of the excluded cause, renders the insured liable for the resulting injuries.' " (*Prince v. United Nat. Ins. Co.* (2006) 142 Cal.App.4th 233, 239 [47 Cal.Rptr.3d 727].) We do not have that situation here.

■ Further, even if the efficient proximate cause doctrine and section 530 were applicable, they would not assist the City, as they do not prohibit an insurer from excluding some manifestations of a covered peril, provided the exclusion "plainly and precisely communicates" to the insured which manifestations the policy does not cover. In *Julian, supra*, 35 Cal.4th 747, the California Supreme Court held that even though the policy at issue there provided coverage for "weather conditions," an exclusion that barred coverage for a rain-induced landslide precluded coverage where heavy rains

triggered a landslide that caused a tree to fall into the insured's home. (*Id.* at pp. 750–751, 761.) Our high court held the exclusion did not violate section 530, the efficient proximate cause doctrine, or the reasonable expectations of the insured. (*Julian, supra,* 35 Cal.4th at pp. 750–751, 761.) Similarly, a policy's exclusion for mold damage "under any circumstance" and "however caused" precluded coverage, regardless of whether a covered peril—sudden and accidental discharge from a plumbing system—was the efficient proximate cause of the mold. (*De Bruyn v. Superior Court* (2008) 158 Cal.App.4th 1213, 1216 [70 Cal.Rptr.3d 652].)

■ As we have explained, *ante,* Exclusion X plainly and precisely explained to the City that the peril of land subsidence, including landslides, was not covered, regardless of the cause. Accordingly, Exclusion X barred coverage for damages resulting from the landslide.

## DISPOSITION

The judgment is affirmed. ISOP shall recover its costs on appeal.

McConnell, P. J., and Aaron, J., concurred.