[No. D057620. Fourth Dist., Div. One. June 20, 2012.]

ROBERT W. WILSON et al., Plaintiffs and Appellants, v.
BRIAN HYNEK et al., Defendants and Respondents.

1000

[black redaction boxes]

## COUNSEL

Law Offices of Charles D. Nachand, Charles D. Nachand and Richard B. Hudson for Plaintiffs and Appellants.

Adleson, Hess & Kelly, Phillip M. Adleson and Lisa J. Parrella for Defendants and Respondents Brian Hynek and Gayl Hynek.

Kirby & McGuinn, Dean T. Kirby, Jr., and Martin T. McGuinn for Defendants and Respondents Polo Investments Funds, LLC, Polo Investment Fund No. 1, LLC, Coast Capital Mortgage Company and Coast Capital Income Fund, LLC.

Richard J. Vattuone and Stephen M. Shaw for Defendant and Respondent U. S. Financial, LLP.

## OPINION

**NARES, Acting P. J.**—This action arises out of a loan to a real estate development property company, Pergola, a Nevada LLC controlled by plaintiff Robert W. Wilson. The loan was secured by a deed of trust on undeveloped land owned by Wilson's company and a deed of trust on a residence owned by Wilson and his wife, plaintiff Sharon Wilson (together, the Wilsons). Defendant Coast Capital Mortgage Company (Coast), a licensed real estate broker, and Coast Capital Income Fund, LLC (together, Coast defendants), arranged for a $1.6 million loan (the Pergola loan) from defendant Polo Investment Fund No. 1, LLC (Polo 1), and Polo Investment Funds,

LLC (together, Polo Fund). Thereafter, Pergola borrowed an additional $1.25 million from Aztec Financial (the Aztec loan), also secured by a deed of trust on the undeveloped land. Subsequently, Pergola borrowed an additional $500,000 from Brian and Gayl Hynek (the Hyneks), secured by a third deed of trust on the undeveloped land.

When the loans matured and Pergola did not pay them off, nonjudicial foreclosure proceedings were instituted. Before the foreclosure process was complete, the Hyneks purchased the loans from Polo 1 and Aztec Financial.

The Wilsons filed the instant action against Coast, Polo Fund and the Hyneks, alleging that they had resisted putting up their residence as additional security, but that they did so because a representative of Coast and Polo Fund, Joe Monte, orally represented to them that (1) in the event of a foreclosure, the lender would first foreclose on the vacant land and, only if there were a deficiency, would the lender foreclose on their residence; (2) the residence would be released once they provided Polo Fund with an appraisal showing the vacant land to be worth at least $5 million; and (3) the loan documents would guarantee and provide that the residence would only be foreclosed upon if there were a deficiency after the foreclosure of the vacant land. The complaint alleges that they signed the loan documents based upon Monte's representations. The complaint further alleges that the Hyneks conspired with the other defendants to foreclose on the residence.

Defendants filed a series of demurrers, which, after the second demurrer, left only causes of action for unfair business practices under Business and Professions Code section 17200 (all undesignated statutory references are to the Business and Professions Code) and intentional infliction of emotional distress in the Wilsons' second amended complaint. The court sustained defendants' demurrers to these remaining causes of action without leave to amend.

On appeal, the Wilsons contend the court erred in sustaining the demurrers to their second amended complaint because (1) their unfair business practices claim was properly pled and (2) their emotional distress cause of action was also properly pled. The Wilsons also contend they should be given leave to amend because the notice of default recorded during the foreclosure process was defective because it was recorded by the wrong entity. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because we are reviewing a judgment of dismissal following the sustaining of a demurrer, we take much of the factual background from the applicable complaint in this action. The applicable complaint is the Wilson's second amended complaint.

A. *The Pergola Note and Related Deeds of Trust*

In early 2004 Wilson was manager of Pergola, which was in the process of purchasing 22 acres of land in Carlsbad for development or for resale (Carlsbad vacant land). In order to obtain funds necessary to acquire the Carlsbad vacant land, Pergola, through the Coast defendants, arranged for a $1.6 million loan (the Pergola loan) with Polo 1 as the lender.

The Pergola loan was evidenced by a note secured by deed of trust (Pergola note) dated January 12, 2004, and was executed by Wilson as manager of Pergola. The Pergola note was secured by a first deed of trust on the Carlsbad vacant land and was also executed by Wilson as manager of Pergola (Pergola deed of trust), by a second deed of trust executed by Wilson and his wife, Sharon L. Wilson (Wilson deed of trust), on their personal residence on Amberwood Court in Carlsbad (the Amberwood property), and by a deed of trust on a condominium owned by the Wilsons.

The Wilsons' complaint alleges that just prior to the close of the Pergola loan, Monte, an agent of the Coast defendants, told Wilson that, in addition to the Carlsbad vacant land, the lender required two additional properties as security for the Pergola loan; i.e., the Amberwood property and a condominium owned by the Wilsons. The Wilsons also asserted that they resisted putting up such additional security, but that they did so because Monte orally represented to them that (1) in the event of a foreclosure, the lender would first foreclose on the Carlsbad vacant land and only if there were a deficiency would the lender foreclose on the Amberwood property or the condominium; (2) the Amberwood property and the condominium would be released once they provided Polo Fund with an appraisal showing the Carlsbad vacant land to be worth at least $5 million; and (3) the loan documents would guarantee and provide that the Amberwood property would only be foreclosed upon if there were a deficiency after the foreclosure of the Carlsbad vacant land. The complaint alleges that they signed the loan documents based upon Monte's representations,.

The second amended complaint alleges that around October 2004 the Wilsons provided the Coast defendants with an appraisal for $6.6 million on the Carlsbad vacant land and information that Pergola had a pending resale of the property for $7 million. The complaint also alleges that, contrary to the representations by Monte, defendants agreed to release the condominium, but not the Amberwood property, even though the Wilsons complied with all of the conditions of the oral release agreement.

### B. *Aztec Second Deed of Trust on Carlsbad Vacant Land*

In or about March 2004, Pergola borrowed an additional $1.25 million from Aztec Financial and secured it with a second deed of trust only on the Carlsbad vacant land.

### C. *The Hyneks' Third Deed of Trust on Carlsbad Vacant Land*

On April 19, 2004, Pergola borrowed $500,000 from the Hyneks (Hynek loan), and secured it by a third deed of trust on the Carlsbad vacant land.

### D. *The Hyneks Foreclose on the Carlsbad Vacant Land*

The Hynek loan matured on April 21, 2005. On May 6, 2008, the Hyneks foreclosed on their third deed of trust and became the owners of the Carlsbad vacant land, subject only to the Pergola deed of trust. Prior to the foreclosure, the Hyneks purchased the deed of trust securing the $1.25 million Aztec loan.

### E. *Defaults on the Pergola Loan and Wilson Deed of Trust*

In or about April/May 2008, Polo 1 and the Coast defendants commenced separate foreclosures on the Pergola deed of trust and on the Wilson deed of trust, setting the sale of the Carlsbad vacant land for August 5, 2008, and the sale of the Amberwood property for August 15, 2008.

### F. *The Wilsons' Alleged Attempt to Bid the Amount Due at Foreclosure Sale*

The complaint alleges that the Wilsons were "ready, willing and able" to bid at the trustee's sale the amount due at the foreclosure sale of the Pergola deed of trust set for August 5, 2008, or, alternatively, that they would be willing to purchase the Pergola note. In support of this allegation, the complaint quotes from a letter sent by the Wilsons' attorney to the attorney for the Coast defendants: "Mr. Wilson has arranged to facilitate a bid on the 22 acres, which will meet or exceed the $1,856,316.77 loan balance. Mr. Wilson plans to provide payment for the 22 acres in the form of a cashier's check. In lieu of a Trustee's Sale on the 22 acres, *Mr. Wilson has also offered to purchase the Deed of Trust for $1,856,316.77.* Mr. Wilson is willing and able to pay the debt which will release the Deed of Trust on the Amberwood residence." (Italics added.)

That letter also protested any postponement of the sale of the Carlsbad vacant land and informed the defendants that "if the Amberwood residence is

sold prior to the [Carlsbad vacant land], your clients will be the Defendants in causes of action for wrongful foreclosure."

The complaint further alleges that defendants "conspired and agreed among themselves <u>not</u> to hold a foreclosure sale for the [Carlsbad vacant land], but instead *to assign the note and first deed of trust for $1,660,000 to Defendants* HYNEK, who would then offer the deed of trust and note as collateral to Defendants [Polo 1] and [Coast defendants]." The complaint alleges that defendants were "attempting to avoid foreclosing on the 22-acre parcel so that defendants HYNEK could hold title to that property and still be allowed to proceed with their foreclosure on [the Wilsons'] residence."

### G. *Trustee's Sale of Amberwood Property*

On November 19, 2008, the trustee's sale under the Wilson deed of trust was concluded and the Amberwood property was sold to defendant U.S. Financial LLP.

## PROCEDURAL BACKGROUND

### *The Original Complaint*

In December 2008 the Wilsons filed a complaint alleging causes of action for declaratory relief, wrongful foreclosure, breach of contract, equitable relief from foreclosure sale, quiet title, cancellation of instrument, violation of section 17200, fraud and intentional infliction of emotional distress.

In addition to making substantially similar allegations as are recited, *ante*, the complaint attached as exhibits the loan documents and deeds of trust related to the transactions. The deeds of trust state that "[t]o the fullest extent allowed by law, *Borrower hereby expressly waives any right which it may have to direct the order in which any of the Property shall be sold* in the event of any sale or sales pursuant to this Deed of Trust." (Italics added.) The deeds of trust state that "Trustee and Lender, and each of [them] *shall be 'entitled to enforce this Deed of Trust and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine.*" (Italics added.) The deeds of trust further state: "Lender, at any time and without the consent of Borrower, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the Loan, this Deed of Trust and other Loan Documents, guaranties given in connection with the Loan and any collateral given to secure the Loan."

The Coast defendants and Polo Fund demurred to the complaint, and the court sustained the demurrer without leave to amend as to the first two causes

of action, finding that pursuant to the deeds of trust, the Wilsons waived their right to direct the priority and order of the foreclosure. The court also sustained without leave to amend the causes of action for equitable relief from foreclosure, quiet title and cancellation of instrument because those defendants did not claim an interest in the property. As to the remaining causes of action, the court sustained the demurrer with leave to amend.

The court sustained the Hyneks' demurrer without leave to amend as to all causes of action with the exception of the cause of action for unfair business practices and intentional infliction of emotional distress.

The Wilsons filed a verified first amended complaint that stated causes of action for breach of written contract, unfair business practices, fraud, intentional infliction of emotional distress and equitable relief. The complaint again attached the relevant loan documents and deeds of trust.

In response, the Hyneks, the Coast defendants and Polo Fund again demurred, and the court sustained the demurrers without leave to amend as to all but the causes of action for unfair business practices and intentional infliction of emotional distress. The court sustained the demurrers to the cause of action for breach of contract based upon the statute of frauds because it only referenced the alleged oral agreement with Monte. The court sustained the demurrers to the cause of action for fraud based upon the statute of limitations. There was no cause of action for equitable relief pleaded in the first amended complaint. The court also admonished the Wilsons "not to file an amended Complaint containing allegations inconsistent with the previously verified Complaints filed in this case."

The Wilsons filed a second amended complaint containing only causes of action for unfair business practices and intentional infliction of emotional distress, as detailed in the factual background, *ante.* However, the second amended complaint omitted as exhibits the loan documents attached to the first two complaints and omitted any references to those exhibits.

The defendants filed demurrers to the second amended complaint, which the court sustained without leave to amend. As to the first cause of action brought under section 17200, the court found that the Wilsons have "failed to plead facts indicating that the lawful acts taken by defendant Coast were unlawful, fraudulent or unfair." As to the cause of action for intentional infliction of emotion distress, the court found "the allegations as [pled] do not rise to the level of 'extreme and outrageous.' "

This timely appeal follows.[1]

## DISCUSSION

### I. *STANDARD OF REVIEW*

We review an order sustaining a demurrer without leave to amend de novo (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), assuming the truth of all properly pleaded facts as well as facts inferred from the pleadings, and give the complaint a reasonable interpretation by reading it as a whole and its parts in context. (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 861 [14 Cal.Rptr.3d 731].) However, we give no credit to allegations that merely set forth contentions or legal conclusions. (*Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 768–769 [234 Cal.Rptr. 653].) A complaint will be construed "liberally . . . with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) If the complaint states a cause of action on any possible legal theory, we must reverse the trial court's order sustaining the demurrer. (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86 [120 Cal.Rptr.2d 741].) Whether a plaintiff will be able to prove its allegations is not relevant. (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

### II. *ANALYSIS*

#### A. *The Wilsons' Unfair Competition Cause of Action*

Section 17200 defines "unfair competition" to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" under section 17500. A claim made under section 17200 " 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.' " (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877 [85 Cal.Rptr.2d 301], quoting *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 519 [63 Cal.Rptr.2d 118].) "[S]ection 17200's definition is 'disjunctive,' the statute is violated where a defendant's act or practice is

---

[1] In their respondents' brief, the Hyneks assert that this appeal is premature because it is taken from the court's order sustaining defendants' demurrers, not the final judgment in this matter. However, as is pointed out by the Wilsons in their reply brief, the clerk of this court notified the parties by a letter dated June 29, 2010, that we would consider the appeal as being from the judgment or dismissal order.

unlawful, unfair, fraudulent or in violation of section 17500." (*South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th at p. 878; see *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102 [53 Cal.Rptr.2d 229].)

The Wilsons do not assert on appeal that any of defendants' actions were "unlawful" or "fraudulent." Rather, the sole basis for their assertion they have adequately pled such a cause of action under section 17200 is that defendants' actions were "unfair." This contention is unavailing.

 "Determination of whether a business practice or act is 'unfair' within the meaning of [section 17200] entails examination of the impact of the practice or act on its victim, ' ". . . balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." [Citation.]' [Citation.] In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices. . . .' " (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969–970 [69 Cal.Rptr.2d 623].)

There is a split of authority in California as to the proper definition of "unfair." The Wilsons assert the proper test for the unfairness prong is whether the practice " 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " (*State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1104.)

However, this court has, on three occasions, rejected that test and has applied a much narrower test, the so-called "Cel-Tech test" for establishing unfairness. (See *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366 [108 Cal.Rptr.3d 682]; *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940 [134 Cal.Rptr.2d 101]; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [135 Cal.Rptr.2d 796].) Under that test, a plaintiff must prove that the defendant's "conduct is tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." (*Durell,* at p. 1366.)

 In both their opening and reply briefs, the Wilsons ignore these cases. Moreover, they do not even attempt to show how their allegations in the second amended complaint can meet this test. Nor can they. As detailed, *ante,* their claims of alleged wrongdoing are directly contradicted by the terms of the deeds of trust, which they omitted as exhibits to their second amended

complaint. Accordingly, the court did not err in sustaining defendants' demurrer to the section 17200 claim.[2]

### B. *The Emotional Distress Claim*

■ "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].)

The court properly sustained the demurrer to the cause of action for intentional infliction of emotional distress because the Wilsons have not pled any allegations of conduct by defendants that could be considered "outrageous." At most, this was a creditor/debtor situation, whereby defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the Wilsons. Thus, the Wilsons cannot state a claim for intentional infliction of emotional distress.

### C. *The Wilsons' Request for Leave to Amend*

For the first time on appeal, the Wilsons assert they can amend the complaint to challenge the nonjudicial foreclosure sale of the Amberwood property because the notice of default was not recorded by E.C.I. Corporation, the original trustee named in the Wilson deed of trust, but rather by PLM Lender Service as agent for the beneficiary. This contention is unavailing.

Civil Code section 2924 et seq. provides a comprehensive scheme for regulation of nonjudicial foreclosure sales. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 [121 Cal.Rptr.3d 819].) Civil Code section 2924, subdivision (a)(1) states in part that "[t]he trustee, mortgagee, or beneficiary, *or any of their authorized agents* shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default." (Italics added.)

---

[2] Polo Fund and the Coast defendants also assert that the Wilsons' section 17200 claim is barred by the statute of limitations. However, as we have concluded that the section 17200 claim fails to state a cause of action as a matter of law, we need not address this alternative contention.

■ Thus, the recording of a notice of default by an authorized agent of the beneficiary is specifically authorized by that statute, and the Wilsons cannot state a claim for a defect in the recording of the notice of default.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

McDonald, J., and Irion, J., concurred.