Filed 1/23/15  U.S. Financial, L.P. v. LNR Group, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| U.S. FINANCIAL, L.P., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LNR GROUP, INC., et al., <br><br> Defendants and Appellants. | D065276 <br><br><br> (Super. Ct. No. 37-2010-00057376-CU-OR-NC) |

APPEAL from a order of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed in part, reversed in part and remanded with directions.

Kirby & McGuinn and Dean T. Kirby, Jr., Martin T. McGuinn for Defendants and Appellants Bryan Hynek, Gayl Hynek, Polo Investments Funds, LLC, Polo Investments Fund No. 1, LLC, Coast Capital Income Fund, LLC.

Charles D. Nachand and Richard B. Hudson for Defendant and Appellant LnR Group, Inc.

John D. Feher for Plaintiff and Respondent.

After plaintiff and respondent U.S. Financial, L.P. (U.S. Financial) purchased property at a trustee's sale following foreclosure of a junior deed of trust, it filed suit against appellants and defendants Bryan Hynek, Gayl Hynek, Polo Investments Funds, LLC, Polo Investments Fund No. 1, LLC, Coast Capital Income Fund, LLC (collectively the Coast defendants), and LnR Group, Inc. (LnR) to determine amounts due under a senior trust deed on the property and to set aside the trustee's sale as void. U.S. Financial was unsuccessful in its claims against appellants, who sought to be declared the prevailing parties in the litigation and recover their attorney fees. The trial court denied the appellants' respective attorney fee motions.

On appeal from that order, the Coast defendants contend that U.S. Financial's action against them was "on the contract"—the foreclosed junior deed of trust—within the meaning of Civil Code[1] section 1717, and by acquiring the trustors' title when it purchased the property at the trustee's sale, U.S. Financial stepped into the shoes of the trustors, rendering it subject to a section 1717 reciprocal attorney fee award. LnR separately appeals, likewise contending the trial court erred because U.S. Financial's action against it was on the contract, namely, the senior deed of trust, and U.S. Financial, as the direct successor in interest to the original trustor, should be obligated to pay fees where it would have been entitled to them had it prevailed. We affirm the order as to the Coast defendants. We reverse the order as to LnR, and direct the superior court to enter an order granting LnR's attorney fee motion.

---

[1]  Statutory references are to the Civil Code unless otherwise indicated.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

*U.S. Financial's Complaint*

In 2010, U.S. Financial sued Robert and Sharon Wilson, the Coast defendants, and Craig L. Combs for declaratory and equitable relief, as well as cancellation of a notice of default of a January 14, 2004 deed of trust (the January 2004 deed of trust) and trustee's deed upon sale of property located on Amberwood Court in Carlsbad (the property), which U.S. Financial had purchased at the trustee's sale. In a first amended complaint, U.S. Financial alleged the property was encumbered by an August 1988 deed of trust securing a $55,000 loan to the Wilsons, naming as beneficiaries Susan and Vicki Peterson (the Peterson deed of trust). It alleged the Wilsons sought to defraud U.S. Financial by intentionally or erroneously misstating the amount due under the Peterson deed of trust, which was assigned to Combs in October 2008. U.S. Financial alleged the October 2008 assignment was improperly executed and recorded, and therefore invalid and unenforceable. It sought a judicial declaration, against Combs only, that the total amount due under the Peterson trust deed was $55,000, and that the Peterson deed of trust's assignment was invalid and unenforceable.

In its second cause of action against all of the defendants, U.S Financial sought to cancel the notice of default of the January 2004 deed of trust. The January 2004 deed of

---

[2] We previously considered issues related to this matter in *Wilson v. Hynek* (2012) 207 Cal.App.4th 999. In that case, we affirmed a judgment entered after the court sustained demurrers to the second amended complaint of the original borrowers, Robert and Sharon Wilson, for unfair business practices and intentional infliction of emotional distress against the Coast defendants. (*Id.* at pp. 1002, 1010.)

trust, signed by the Wilsons, secured a $1,660,000 loan to them and named Polo Investments Fund No. 1, LLC as the lender and E.C.I. Corporation (ECI) as the trustee.[3] U.S. Financial alleged that in October 2007 Polo Investments Fund No. 1, LLC assigned its interest in the January 2004 trust deed to Coast Capital Income Fund, LLC, which in September 2008 assigned its interest to the Hyneks. U.S. Financial alleged that in February 2008 a notice of default of the January 2004 deed of trust was recorded by entities (PLM or First American) who were not the trustee of record, and that in November 2008 PLM purported to convey the property to U.S. Financial by trustee's deed upon sale, but that the underlying notice of default was invalid and unenforceable because the trustee of record, ECI, did not cause it to be recorded. It sought to cancel the notice of default and set aside, rescind or cancel the trustee's deed upon sale, and obtain restitution and damages.

U.S. Financial's third cause of action sought equitable relief against Combs to estop him from asserting any interest in the Peterson deed of trust. It alleged the promissory notes by which the Peterson deed of trust was secured were due in 1988, but the beneficiaries of the trust deed either did not record a full reconveyance, or they did not take action to foreclose on the trust deed, and that the beneficiary's ability to collect on the notes, lien and security interest expired in 1992. It sought a judicial determination

---

3    The January 2004 deed of trust provides in part: "This deed of trust is recording as additional security for a first [*sic*] deed of trust and note in the amount of $1,660,000 in favor of Polo Investments Fund No. 1, LLC recording concurrently herwith [*sic*] *and is recording second and subordinate to the first deed of trust.*" (Italics added, some capitalization omitted.)

4

that Combs was estopped from enforcing or attempting to enforce the Peterson deed of trust through nonjudicial foreclosure sale or otherwise. For all causes of action, U.S. Financial requested costs of suit and prayed for "such other further relief as this Court deems proper and just."

*The Coast Defendants' Motions for Judgment on the Pleadings on U.S. Financial's First Amended Complaint*

The Coast defendants filed motions for judgment on the pleadings on U.S. Financial's first amended complaint.[4] They argued U.S. Financial's second cause of action to cancel or invalidate the notice of default and trustee's deed upon sale duplicated a proposed cross-complaint U.S. Financial had unsuccessfully sought to file in an earlier action brought by the Wilsons. (*Wilson et al. v. U.S. Financial, L.P.* (Super. Ct. S.D. County, 2010, No. 37-2008-00104260-CU-CT-NC) (the *Wilson* action). The *Wilson* action had been dismissed in its entirety after the court sustained demurrers of U.S. Financial and the Coast defendants without leave to amend, and that dismissal was upheld by this court on the Wilsons' appeal in *Wilson v. Hynek*, *supra*, 207 Cal.App.4th 999. The Coast defendants argued that U.S. Financial's claim was identical to one asserted by the Wilsons and rejected by this court, namely that the foreclosure sale was invalid because ECI did not file the notice of default. (*Wilson v. Hynek*, at p. 1009.) As a result of this, as well as the fact U.S. Financial had unsuccessfully sought to bring a

---

4    Polo Investments Funds, LLC, Polo Investments Fund No. 1, LLC and Coast Capital Income Fund, LLC filed their own motion. The Hyneks separately moved for judgment on the pleadings based on largely identical arguments. They joined in each others' motions. These parties are jointly represented in this appeal.

cross-complaint in the *Wilson* action to determine the amount due on the Peterson deed of trust, and the fact U.S. Financial did not file a cross-appeal, the Coast defendants maintained U.S. Financial's second cause of action was barred by res judicata and collateral estoppel, as U.S. Financial had either litigated or had an opportunity to litigate its claim in the earlier action. They also argued U.S. Financial's second cause of action was barred by judicial estoppel because in the *Wilson* action it took the position it was a bona fide purchaser for value and that all default and trustee's sale rules had been "meticulously followed" without irregularities. The Coast defendants argued judicial estoppel precluded U.S. Financial from taking an entirely inconsistent position in the present action.

The court granted the motions and dismissed the Coast defendants from the complaint, but also granted in part U.S. Financial's request to file a second amended complaint. It thereafter entered a judgment of dismissal in favor of the Coast defendants providing that they "shall recover from plaintiff U.S. Financial, L.P., their costs of suit by way of memorandum of costs and attorney's fees pursuant to a motion for attorney's fees [and] costs."

*U.S. Financial's Second Amended Complaint*

Combs assigned the Peterson deed of trust to LnR in August 2012.

In April 2013, U.S. Financial filed a second amended complaint seeking declaratory and equitable relief against LnR. It alleged LnR had wrongfully claimed that the total amount due under the Peterson deed of trust was in excess of $166,000, and that the trustors or LnR had misstated the amount due under that trust deed in an effort to

6

mislead and defraud U.S. Financial. It further alleged the promissory note underlying the Peterson deed of trust either never existed and thus had no market value, or it had never been transferred or assigned to Combs, which invalidated the purported October 2008 assignment of that trust deed to Combs, and Combs's purported assignment to LnR in August 2012. U.S. Financial alleged that a controversy had arisen in that it contended, and LnR disputed, that "1) the assignments of beneficial interest in the [Peterson] deed of trust at issue to . . . Combs and LnR are void and without effect; 2) . . . Combs and LnR do not possess a secured interest in the Property; 3) the [Peterson] deed of trust has no market or ascertainable value; [and] 4) enforcement of the promissory note at issue is barred due to the expiration of the statute of limitations." It alleged the Peterson deed of trust had no ascertainable market value, was paid in full, or that no payments were made on it since August 1988, and that LnR therefore should be estopped from alleging an interest in that trust deed. U.S. Financial alleged that the beneficiary under the Peterson deed of trust neither recorded a full reconveyance nor took action to foreclose and thus its ability under the underlying promissory note to enforce the security interest expired in 1992. It alleged the beneficiary was barred by the statute of limitations or should be estopped from asserting an interest in the property. U.S. Financial sought a judicial declaration, among others, that the beneficiary was barred from enforcing the underlying note by the limitations period and should be estopped from attempting to enforce the note through nonjudicial foreclosure sale or otherwise.

LnR successfully moved for summary judgment on U.S. Financial's second amended complaint. In part, the court ruled the underlying indebtedness owed to the

7

Petersons was $105,000 as represented by five promissory notes, that the Wilsons secured only $55,000 of that indebtedness with the Peterson deed of trust, and that all five promissory notes were transferred to Combs and LnR. It ruled the facts did not establish an equitable estoppel, and that the applicable limitations period was sixty years under section 882.020. The court declared LnR the prevailing party.

*The Coast Defendants' Motion for Attorney Fees*

The Coast defendants moved to recover their attorney fees and costs under Civil Code section 1717, Code of Civil Procedure section 1032 and 1033.5 and rule 3.1702 of the California Rules of Court. The Hyneks additionally moved for attorney fees under Civil Code sections 3287, subdivision (b), and 3289, subdivision (a).

The Coast defendants argued that as the prevailing parties, they were entitled to recover their attorney fees and costs under section 1717 and the attorney fees provision in the January 2004 deed of trust that was the subject of U.S. Financial's claim for declaratory relief, which was "on a contract" within the meaning of section 1717. They argued that the fact U.S. Financial was not a signatory to the January 2004 trust deed did not affect their right to recovery; that U.S. Financial, as the successful third party bidder at the trustee's sale, derived its title through the January 2004 trust deed, which was either originated by the Coast parties or succeeded to by the Hyneks. They argued, "Thus, the basis for awarding the [Coast defendants] their legal fees is because [U.S. Financial] derived its title through the trust deed which was executed by the Wilsons. Title to the property transferred to [U.S. Financial] from PLM as substituted trustee under the January 2004 trust deed because the borrowers, Wilsons, defaulted on the trust deed

8

secured by the Amberwood property." They pointed out that U.S. Financial "invoked the provisions of the January 2014 [*sic*] deed of trust to justify its allegations that the foreclosure sale was void" and "sought to use the language of the trust deed which [U.S. Financial] believed was to its benefit as a sword to attack the Coast [defendants]." They argued U.S. Financial's success in its action would have required return of the monies tendered by it when the foreclosure sale was conducted. Finally, the Coast defendants argued that their respective attorney fee requests ($175,953.50 in fees sought by Polo Investments Funds, LLC, Polo Investments Fund No. 1, LLC and Coast Capital Income Fund, LLC, and $181,700.89 sought by the Hyneks) were reasonable.

*LnR's Motion for Attorney Fees*

LnR also moved to recover its attorney fees and costs. It likewise argued it was the prevailing party having obtained summary judgment in its favor, and under section 1717, it was entitled to its reasonable attorney fees of $147,175.00. In part, it argued, relying on *Saucedo v. Mercury Savings and Loan Assn.* (1980) 111 Cal.App.3d 309 (*Saucedo*), that as a nonassuming grantee, U.S. Financial would have practical liability for the fees in a foreclosure.

*U.S. Financial's Opposition*

In opposition, U.S. Financial argued it was not liable for attorney fees, as it was neither the borrower, nor a nonassuming grantee, nor a beneficiary or third party beneficiary, nor a party to the deed of trust, and it did not assume the trust deed's obligations. It argued that as a nonsignatory and complete stranger to the Peterson deed of trust, it was not liable for attorney fees, and there was no equitable award of such fee,

9

because there was no possibility it could recover its fees had it prevailed in its declaratory relief action. It distinguished *Saucedo*, *supra*, 111 Cal.App.3d 309, arguing that it should be limited to its peculiar factual situation where a nonsignatory plaintiff unsuccessfully filed an action to stop a foreclosure sale from occurring. U.S. Financial argued it could not be held liable for fees because it did not assume the debt or trust deed obligation when it purchased the property at the foreclosure sale. As to LnR, U.S. Financial argued its requested fees were unreasonable.

*Trial Court's Ruling*

The trial court denied the attorney fee motions. It ruled U.S. Financial was not a party to the deed of trust containing the attorney fee provision, and there was nothing in the deed of trust that showed it intended to benefit U.S. Financial. The court pointed out U.S. Financial did not seek attorney fees in its complaint, and it would not have been entitled to such fees had it prevailed in its action. It further ruled that fees sought by all the parties were reasonable and necessary, and that they would have been awarded in full had they been legally awardable.

DISCUSSION

I. *Legal Principles for Recovery of Section 1717 Attorney Fees*

This court reviews a determination of the legal basis for an award of attorney fees independently as a question of law. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237 (*Barnhart*); *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 903.) Entitlement to attorney fees is governed by Code of Civil Procedure section 1032, which provides in part, "Except as otherwise expressly provided

10

by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).) Code of Civil Procedure section 1033.5, subdivision (a)(10) allows attorney fees as costs when fee recovery is authorized under either contract, statute, or other law. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606.) Under these provisions, "recoverable litigation costs do include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." (*Ibid.*)

"Section 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract. [Citations.] Under that statute, when a contract provides for an award of fees 'incurred to enforce that contract,' 'the party prevailing on the contract . . . shall be entitled to reasonable attorney fees' [Citation.] 'The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions.' [Citation.] Thus, 'when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees *whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed*.' " (*Barnhart*, *supra*, 211 Cal.App.4th at p. 237.)[5]

---

5    Section 1717 provides in part: "(a) In any action on a contract, where the contract specifically provides that the attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in

11

"As a general rule, [contractual] attorney fees are awarded only when the lawsuit is between signatories to the contract. [Citation.] However, under some circumstances, the . . . section 1717 reciprocity principles will be applied in actions involving signatory and nonsignatory parties. [Citation.] [¶] Two situations may entitle a nonsignatory party to attorney fees. First is where the nonsignatory party 'stands in the shoes of a party to the contract.' Second is where the nonsignatory party is a third party beneficiary of the contract." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966; see also *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017-1018 ["[a] nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party ' "stands in the shoes of a party to the contract" ' "]; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 897 ["a nonsignatory seeking relief as a third party beneficiary may recover fees under a fee provision only if it appears that *the contracting parties intended* to extend such a right to one in his position"].)

We examine some of the cases involving nonsignatory plaintiffs, as U.S. Financial is here. In *Saucedo*, nonsignatory plaintiffs, "nonassuming grantees" of property encumbered by a deed of trust, were held entitled to fees after they successfully brought suit to enjoin enforcement of the underlying promissory note's due on sale clause. (*Saucedo*, *supra*, 111 Cal.App.3d at pp. 310-312.) The deed of trust provided inter alia that to protect the security of the deed of trust, the borrowers agreed " '[t]o appear in and defend any action or proceeding purporting to affect the security hereof or the rights or

addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

powers of the Beneficiary or Trustee, and to pay all costs and expenses, including . . . attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.' " (*Id*. at p. 311, italics omitted.)  The plaintiffs purchased the property from the borrowers, taking it "subject to" the existing loan represented by the deed of trust, and began negotiations with the lender for assumption of the loan.  (*Ibid.*)  Instead, the lender elected to enforce the due on sale clause and filed a notice of default and election to sell under the deed of trust.  (*Ibid*.)

The plaintiffs successfully sued the lender to stop the foreclosure, obtaining summary judgment on their cause of action for declaratory relief.  (*Saucedo*, *supra*, 111 Cal.App.3d at p. 312.)  They sought attorney fees, which the lender opposed.  (*Ibid*.)  The Court of Appeal agreed that while plaintiffs were not parties to the note or deed of trust, and were not personally liable for the performance of those obligations, the plaintiffs as a "practical matter" would have had to pay the lender's fees as a condition of redemption upon foreclosure, and held "in every case in which the nonassuming grantee has a sufficient interest in the property to warrant his resisting foreclosure, he would as a real and practical matter be required to pay reasonable attorney fees incurred by trustee and/or beneficiary should they prevail in the action to prevent foreclosure."  (*Id*. at p. 315.)  According to the court, "This practical 'liability' of the nonassuming grantee is sufficient to call into play the remedial reciprocity established by Civil Code section 1717."  (*Ibid*.)

In *Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, a nonsignatory plaintiff was the beneficiary of a trust whose assets, including a residence, had been encumbered by a signatory trustee who borrowed money from various entities

13

and individuals. (*Id*. at pp. 1298-1300.) One of the promissory notes and a trust deed encumbering the property contained attorney fee provisions. (*Id*. at p. 1305.) The plaintiff sued the trustee, the lender and others to clear title to the property by having the various trust deeds declared void. (*Id*. at p. 1300.) The lenders prevailed and sought to recover attorney fees from the plaintiff, but the trial court ruled the plaintiff was not a signatory to the notes and trust deeds. (*Id*. at p. 1301.) Distinguishing *Saucedo*, *supra*, 111 Cal.App.3d 309 and other cases (*Leach*, at pp. 1306-1307[6]), the Court of Appeal affirmed the attorney fees order, reasoning: "The California Supreme Court has determined that one may only recover attorney's fees pursuant to section 1717 if one 'would have been liable' for such fees had the opposing party prevailed. [Citation.]

---

[6] The *Leach* court explained: "*Wilhite* [*v. Callihan* (1982) 135 Cal.App.3d 295] and *Saucedo*[, *supra*, 111 Cal.App.3d 309] arise in the context of an action to prevent foreclosure for nonpayment of a loan. The cases hold that, in this situation, a non-signatory plaintiff is entitled to receive attorneys' fees, because, as a practical matter, he would have had to pay fees as part of the total debt that would have to be refinanced to avoid foreclosure. In both cases, the non-signatory plaintiff was a successor in interest to an original signatory of a loan; the real property that the plaintiff obtained was purchased subject to the loan agreement that included both a due-on-sales clause and an attorney's fees clause. There are differences between these cases and that of [plaintiff]. First, [plaintiff] is not a signatory's successor in interest; she is a beneficiary of a trust, the assets of which the signatory, acting as trustee, has encumbered. Second, *Wilhite* and *Saucedo* both base the right to recover fees on the 'practical' impact of the plaintiff's act: that the plaintiff must pay attorney's fees because, if he or she had refinanced, rather than sued to avoid foreclosure, the plaintiff would have had to pay the lender the entire debt, including the attorney's fees that the defendant-lenders would include within the debt owed. [Plaintiff] obtained an injunction to prevent foreclosure, not as an alternative to refinancing a loan, but because she believed that the contract underlying debt was void. As such, the practicalities present in *Wilhite* and *Saucedo* justifying an award of attorney's fees are not present in [plaintiff's] case." (*Leach v. Home Savings & Loan Assn.*, *supra*, 185 Cal.App.3d at p. 1306.)

14

Judging by this language, [*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129] and section 1717 require that the party claiming a right to receive fees establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party." (*Leach*, 185 Cal.App.3d at pp. 1306-1307.) It held the lender was not entitled to attorney's fees because plaintiff was not a signatory to the note and deed of trust and had no independent right to recover fees under the attorney fees clauses in them had she prevailed. (*Id*. at p. 1307.[7])

In *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101 (*Abdallah* ) a prevailing signatory defendant, a bank, was held entitled to attorney fees from the nonsignatory plaintiff, who sued for breach of a note and deed of trust, alleging he owned a legal and equitable interest in property owned by his parents and had acted as their agent in dealing with the bank. (*Id*. at p. 1106.) The *Abdallah* court explained: "Although Fred Abdallah did not sign the note or deed of trust, he sued respondents for breach of those contracts, and he sought to recover attorney fees from respondents on his breach of contract action and related claims. A defendant that has signed a contract providing for attorney fees is generally entitled to fees if it prevails against a

---

[7]     The *Leach* court said:  "[Plaintiff's] bare *allegation* that she is entitled to receive attorney's fees would not have been sufficient to prove her case; she must also have established that the attorney's fees clauses in the promissory note and the deed of trust *actually* entitled her to recover fees.  The note and deed of trust were executed by [the successor trustee], not [plaintiff].  As a plaintiff who was not a signatory to these contracts, [plaintiff] would have no independent right to recover fees under the attorney's fees clauses contained in them.  Under the mutuality of remedy theory of section 1717, the [lenders] may not recover fees from [plaintiff].  (*Leach v. Home Savings & Loan Assn.*, *supra*, 185 Cal.App.3d at p. 1307.)

15

nonsignatory plaintiff in an action on the contract. [Citation.] Fred Abdallah's status as a nonsignatory is irrelevant; the only question is whether he would have been entitled to *his* fees if he had prevailed. [Citation.] Since it is undisputed that Fred Abdallah would have been entitled to fees if he had been a prevailing party, there is no question that he is liable for fees as a losing party." (*Id.* at p. 1111.)

In *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, a city and developer entered into a lease for development and construction of a commercial space, in which it was agreed another party, Real Property Services Corp. (RPS), would operate a theater. (*Id.* at p. 377.) The lease provided that the prevailing party would be entitled to attorney fees in an action brought by either party under the lease. (*Id.* at p. 378.) RPS was a sublessee of the developer, but not a signatory to the lease. (*Id.* at p. 377.) When the city decided to proceed with another project, RPS sued it for breach of the master lease for loss of a business opportunity, alleging it (RPS) was entitled to the benefits of the lease agreement to the extent of the attorney fees provision. (*Id.* at p. 378.) The city prevailed, but the court denied it attorney fees. (*Ibid.*) The appellate court reversed, holding the city was entitled to recover its attorney fees under section 1717 as the prevailing party. It pointed out it was "settled law" that where a lessor has expressly agreed to a sublease, the sublessee is a third party beneficiary to the lease. (*Id.* at p. 383.) Accordingly, "[w]here there is a sufficient nexus between the lessor and sublessee, a nonsignatory sublessee is entitled to enforce an attorney fee provision in the lease as a third party beneficiary against a signatory landlord." (*Id.* at p. 383.) In that case, a provision of the lease expressly provided for RPS to be the sublessee who would

16

operate the movie theater, thereby establishing a nexus between RPS and the city, and thus RPS was entitled to proceed against the city for its claimed breach, and RPS was liable for costs and attorney fees if it was not successful in proving the city's breach. (*Id*. at pp. 383-384.)

In *Exarhos v. Exarhos*, *supra*, 159 Cal.App.4th 898, a grandson filed an action against a bank for breach of a written deposit agreement, claiming to be a named beneficiary and his grandmother's successor in interest with respect to certain bank accounts. (*Id.* at pp. 900-901.) The trial court sustained the bank's demurrer without leave to amend, and thereafter awarded it attorney fees under section 1717. (*Exarhos*, at p. 902.) On appeal, the grandson argued he was a nonsignatory to the deposit agreement. (*Id*. at p. 903.) This court observed that "[a] person who acts as a decedent's successor in interest, 'step[s] into [the decedent's] position,' as to a particular action" (*id*. at p. 905) and that a "successor in interest 'succeeds to a cause of action' by operation of law." (*Id*. at p. 906, citing Code of Civil Procedure section 377.11.) The court explained the grandson was liable for contractual attorney fees under the deposit agreement and section 1717; he had not pointed to any language in the deposit agreement manifesting an intent to exclude alleged successors in interest from the scope of the attorney fee provision, and because he was in control of the litigation and primed to take the benefits if he had prevailed, he would have been entitled to fees. (*Exarhos*, 159 Cal.App.4th at pp. 903, 906-907.)

II. *The Coast Defendants' Appeal*

On appeal, the Coast defendants point to paragraph No. 21 in the January 2004 deed of trust, which provides: "In any action to foreclose the lien hereof or otherwise

17

enforce Lender's rights and remedies hereunder, there shall be allowed and included as additional Indebtedness all expenditures and expenses which may be paid or incurred by or on behalf of Lender including . . . attorneys' fees . . . . All expenditures and expenses of the nature mentioned in this Section 21 and such costs, expenses and fees as may be incurred or as may be owing by Lender in the protection of the Property and the maintenance of the lien of this Deed of Trust, including the fees, costs and expenses of any attorneys employed by Lender in any litigation or proceeding affecting this Deed of Trust, the Note, the other Loan Documents or the Property; . . . or in preparations for the commencement or defense of any action or proceeding or threatened action or proceeding, . . . shall be immediately due and payable to Lender, with interest thereon at the default rate set forth in the Note, and shall be secured by this Deed of Trust. In addition to the foregoing award of attorney's fees and costs, Lender shall be entitled to its attorneys' fees and costs incurred in any post-judgment proceedings to collect or enforce any judgment or order relating to this Deed of Trust, the Note secured hereby or the other Loan Documents. This provision is separate and several and shall survive the merger of this provision into any judgment."

The Coast defendants maintain U.S. Financial's action "was clearly within the scope of the above-quoted attorney fee provision, as it constituted 'litigation . . . affecting this Deed of Trust . . . or the Property,' " even though the provision only refers to recovery of fees by the trust deed beneficiary. The Coast defendants further argue that U.S. Financials' second cause of action was on the contract because it was based on an

18

alleged violation of the terms of the January 2004 deed of trust: ECI's failure to file the notice of default.

U.S. Financial, on the other hand, repeating its arguments below, points out it was not a party to either trust deed, was not a third party beneficiary but a third party purchaser, and did not assume the trust deed obligations or step into the borrower's shoes when it purchased the property at the trustee's sale. As a result, U.S. Financial contends, it would have no right to recover attorney fees under the attorney fee clause or section 1717 had it prevailed in its declaratory relief action. More specifically, U.S. Financial argues that section 1717 provides a reciprocal remedy only for a nonsignatory *defendant* sued on a contract as if he were a party to it, and that, as a nonsignatory plaintiff who was not trying to stop a foreclosure sale (unlike the nonsignatory plaintiff in *Saucedo*, *supra*, 111 Cal.App.3d 309), it had no "practical liability" for attorney fees relating to the January 2004 trust deed.

A. *U.S. Financial's Action was "On the Contract" as it Challenged Compliance with the Terms of the January 2004 Deed of Trust*

We have no difficulty concluding that U.S. Financial's action was "on the contract" within the meaning of section 1717. U.S. Financial's sole arguments on this point are that its action was not one for breach of contract, it did not seek attorney fees, and it did not challenge the validity or enforceability of the trust deeds. We are not persuaded. " 'California courts construe the term "on a contract" liberally. [Citation.] The phrase 'action on a contract' includes not only a traditional action for damages for breach of a contract containing an attorney fees clause [citation], but also any other action

19

that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action [citation]. 'In determining whether an action is "on the contract" under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action.' " (*Barnhart*, *supra*, 211 Cal.App.4th at p. 240; *Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 435 [relevant factors for determining whether an action is " 'on a contract' " are " 'the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery' "].)

An action on a contract within the meaning of section 1717 has been held to include "an action seeking declaratory and injunctive relief and quiet title based on violations of the terms of a promissory note and deed of trust . . . ." (*Barnhart*, *supra*, 211 Cal.App.4th at p. 241, citing *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347 (*Kachlon*).) In *Kachlon*, parties (the Markowitzes, who were plaintiff signatories to the note at issue) brought an action challenging a nonjudicial foreclosure initiated by the Kachlons on grounds the Markowitzes had fully satisfied a promissory note they had previously executed in the Kachlons' favor secured by a second deed of trust on their home. (*Id*. at pp. 326, 329.) In part, the Markowitzes brought equitable claims for declaratory and injunctive relief, and quiet title against the Kachlons and a substituted trustee that had recorded the notice of default, seeking cancellation of the underlying promissory note and a reconveyance of the trust deed, an injunction against the foreclosure, and quiet title of the property in their favor. (*Id*. at p. 329.) A jury found

the Kachlons' nonjudicial foreclosure was wrongful and awarded damages to the Markowitzes. (*Id*. at p. 330.) Based on that finding, the trial court granted the Markowitzes their requested equitable relief and canceled the promissory note, ordered the trust deed reconveyed, and cleared title on the Markowitzes' residence in their favor. (*Id*. at pp. 330-331.) It ordered the trustee to record a notice of rescission of the pending foreclosure and a deed of reconveyance, and it enjoined the Kachlons and the trustee from claiming a default or otherwise exercising the power of sale provision in the trust deed. (*Id*. at p. 331.)

The Markowitzes moved for recovery of their attorney fees for their equitable claims under a unilateral attorney fee clause in the deed of trust and section 1717. (*Kachlon v. Markowitz*, *supra*, 168 Cal.App.4th at pp. 345-346.) The trial court granted the motion, and on appeal from that ruling, the Kachlons argued their equitable claims were not based on contract. (*Id*. at p. 346.) The appellate court rejected the contention, pointing out that both the promissory note and the trust deed had unilateral attorney fee clauses by which the Markowitzes agreed to pay attorney fees in any action instituted on the promissory note and in any action affecting the security of the deed of trust or the rights or powers of the Kachlons as the beneficiaries. (*Id*. at p. 347.) It held the Markowitzes' declaratory relief claim—in which they sought a judicial declaration that the promissory note must be cancelled because it had been paid in full, and that the deed of trust must be reconveyed because the foreclosure violated the trust deed's terms—was an action for a declaration of rights under those agreements. (*Id*. at pp. 347-348.) Additionally, the Markowitzes' claim for an injunction was in part contractual in that it

was based on the theory that the foreclosure violated the terms of the trust deed. (*Id*. at p. 348.) Finally, the quiet title claim sought to enforce the terms of the deed of trust requiring reconveyance of title upon satisfaction of the underlying debt. (*Ibid*.)

Here, U.S. Financial sought to cancel the notice of default and invalidate the foreclosure sale based on a violation of the January 2004 trust deed's provisions naming ECI as the trustee of record. Its action was sufficiently related to the January 2004 trust deed, and sought to declare duties under it, such that its claim was "on the contract" as that phrase as been interpreted for purposes of invoking section 1717.

B. *There is No Legal or Equitable Theory By Which U.S. Financial Would have Been Liable for Attorney Fees Had it Prevailed in the Action*

U.S. Financial did not sign the January 2004 deed of trust or its underlying promissory note. As we have stated, however, under the reciprocity rules of section 1717, where a nonsignatory plaintiff, as is U.S. Financial, sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees if the nonsignatory plaintiff would have been entitled to its fees had the plaintiff prevailed. (*Cargill, Inc. v. Souza*, *supra*, 201 Cal.App.4th at p. 967; *Exarhos v. Exarhos*, *supra*, 159 Cal.App.4th at pp. 903-904; *Sessions Payroll Management, Inc.* (2000) 84 Cal.App.4th 671, 679; *Real Property Services Corp. v. City of Pasadena*, *supra*, 25 Cal.App.4th at p. 382.) A "bare *allegation*" of entitlement to fees is not sufficient. (*Leach v. Home Savings & Loan Assn.*, *supra*, 185 Cal.App.3d at p. 1307; see also *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 962, fn. 12.) Instead, the cases establish that "the party claiming a right

22

to receive fees [must] establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party." (*Leach*, at p. 1307; see *Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at p. 129 [one may only recover attorney fees under section 1717 if he or she "would have been liable" for such fees had the opposing party prevailed]; *Blickman Turkus. LP v. M.F. Downtown Sunnyvale, LLC*, *supra*, 162 Cal.App.4th at p. 899.)

Here, U.S. Financial purchased the property at the trustee's sale foreclosing on the January 2004 deed of trust. " 'As a general rule, the purchaser at a nonjudicial foreclosure sale receives title under a trustee's deed *free and clear of any right, title or interest* of the trustor. [Citation.] A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.] Once the trustee's sale is completed, the trustor has no further rights of redemption." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1250, italics added; see *Wells Fargo Bank v. Neilsen* (2009) 178 Cal.App.4th 602, 614.) The Coast defendants have not shown that the parties to the January 2004 trust deed in any way intended that U.S. Financial would be a third party beneficiary of the January 2004 deed of trust, and we conclude, as a third party purchaser at the nonjudicial foreclosure sale, it was not. (Accord, *Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891 [third party beneficiary must show the contracting parties intended to benefit the third party, and "it is not enough that the third party would incidentally have benefited from performance" of the contract]; *Walters v. Calderon* (1972) 25 Cal.App.3d 863, 870-871 ["[I]t is not every contract for the benefit of a third person that is enforceable by the beneficiary. The fact that he is

23

incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions."].)

Absent a third party beneficiary theory, under section 1717, the Coast defendants are entitled to recover attorney fees from U.S. Financial only if U.S. Financial either "stands in the shoes" of the parties to the January 2004 deed of trust, or would have had some "practical" or other liability to pay attorney fees had it succeeded in its claims. (E.g., *Brusso v. Running Springs Country Club, Inc.* (1991) 228 Cal.App.3d 92, 111 [nonsignatory plaintiffs would have been entitled to attorney fees under the substantial benefit doctrine had they prevailed].)  The Coast defendants maintain that U.S. Financial "stood in the shoes" of the Wilsons because it "succeeded in the title" of the Wilsons, and is a "successor in interest."  They compare the circumstances to those in *Abdallah v United Savings Bank*, *supra*, 43 Cal.App.4th 1101.  We disagree.  In *Abdallah*, the plaintiff son alleged he acted as an agent of his parents, and the parties did not dispute he would have been entitled to fees if he had been a prevailing party.  Here, the parties dispute U.S. Financial's entitlement to fees upon prevailing.  The critical issue where there is a nonsignatory plaintiff, as the authorities discussed above demonstrate, is that there must be some other theory (i.e., third party beneficiary status) to entitle that party to assert the party's right to fees where the plaintiff is not a party to the contract.  (See *Real Property Services Corp. v. City of Pasadena*, *supra*, 25 Cal.App.4th at pp. 380-383.)  The circumstances are not comparable to *Abdallah*.

24

Nor is the situation comparable to *Exarhos v. Exarhos*, *supra*, 159 Cal.App.4th 898, where the grandson sued as a successor in interest. U.S. Financial received title under the trustee's deed *free and clear of any right, title or interest* of the trustor (*Melendrez v. D & I Investment, Inc.*, *supra*, 127 Cal.App.4th at p. 1250) thus the Coast defendants' successor-in-interest theory fails. The circumstances are likewise different from *Saucedo*, *supra*, 111 Cal.App.3d 309, where had the nonsignatory plaintiffs been unsuccessful in avoiding the foreclosure sale, they would have had to pay attorney fees as part of the underlying debt to protect their equity in the property. (See *Leach v. v. Home Savings & Loan Assn.*, *supra*, 185 Cal.App.3d at p. 1307.) The Coast defendants point to no similar obligation of U.S. Financial to pay attorney fees.

In this case, U.S. Financial did not purchase the property subject to the January 2004 deed of trust; it was a stranger to the Wilsons, and the Coast defendants have not shown any "nexus" or other privity of relationship as to that trust deed that would justify a conclusion that U.S. Financial stood in the Wilsons' shoes in any way. U.S. Financial simply had no connection to the January 2004 deed of trust. Under the January 2004 deed of trust, the Wilsons ("Trustors") transferred the property to ECI ("Trustee") in trust to secure a debt of $1,660,000 owed by the Wilson's to Polo Investments Fund No. 1, LLC ("Beneficiary"). Under the attorney fee clause in that trust deed, the Wilsons agreed to pay attorney fees of ECI and Polo Investments Fund No. 1, LLC under certain circumstances. U.S. Financial has never contended that any attorney fee clause in any of these trust deeds would entitle it to recover attorney fees if it had prevailed in this case. Section 1717 "is meant to prevent 'oppressive use of one-sided attorney's fees provisions

25

[citation], not to abolish the general rule that each party pay its own attorney fees. It is one thing to grant nonsignatories the right to attorney fees where they are sued as if they were contracting parties liable for fees or otherwise held to the terms of the contract, and quite another to grant nonsignatories the right to attorney fees where no legal liability for fees was ever asserted and only an attenuated economic impact is threatened." (*Diamond Heights Village Association, Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 308.)

In sum, the Coast defendants do not establish any legal or equitable theory under which U.S. Financial, which did not sign or succeed to the January 2004 deed of trust or the Wilson's interests as to that trust deed, would have been entitled to recover its attorney fees had it prevailed in its action on that contract. There is no basis to render inapplicable the well-established rule that precludes an award of attorney fees to prevailing parties unless provided for by agreement or statute. The trial court did not err in denying the Coast defendants' attorney fee motion.

### III. *LnR's Appeal*

On appeal, LnR likewise argues that U.S. Financial's action was "on the contract," but it points to the *senior Peterson deed of trust*, which provides that the trustor agrees: "To Protect the Security of This Deed of Trust . . . . [¶] . . . [¶] . . . (3) To appear in and defend any action or proceeding purporting to affect the security hereof; or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including . . . attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear . . . . [¶] (4) . . . Should Trustor fail . . . to do any act

26

as herein provided, . . . then Beneficiary or Trustee . . . may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to . . . appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; . . . and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.  [¶]  . . .  [¶]  . . .  (13)  That this Deed applies to, inures to the benefit of, and binds all parties hereto, their . . . successors and assigns."

In its second amended complaint, U.S. Financial sought to declare the senior Peterson deed of trust unenforceable or without value on various grounds and theories, and asked for a judicial declaration that LnR should be precluded from asserting its interest, including by foreclosure.  Based on the authorities discussed above, U.S. Financial's action against LnR was "on the contract" (the Peterson deed of trust) within the meaning of section 1717 because its claims involved, and sought to declare rights and duties as to, the Peterson deed of trust.

When U.S. Financial purchased the property at the trustee's sale of the junior January 2004 deed of trust, it succeeded to the interests of the Wilsons as to the *senior* Peterson deed of trust, and took title to the property subject to the loan secured by that first deed of trust.  (See *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 180 [party who purchases property at foreclosure sale on junior lien acquires title subject to all senior liens]; *Najah v. Scottsdale Insurance Company* (2014) 230 Cal.App.4th 125, 140 [same]; *Whitman v. Transtate Title Co.* (1985) 165 Cal.App.3d 312, 321 [purchaser of property at trustee's sale under third deed of trust, was the owner of the property and

27

was the successor in interest to the original trustor, who no longer had any ownership interest in the property]; see also *Ostayan v. Serrano Reconveyance Co.* (2000) 77 Cal.App.4th 1411, 1414, 1422 [plaintiff, the purchaser at a foreclosure sale of a second deed of trust, who sought to set aside the sale based on alleged misrepresentations concerning other trust deed obligations and an excessive bid on his part, "had every right, as purchaser, to assume the senior lien and go forward as owner of the property. Had [plaintiff] not made a legal error and made an excessive bid he would have had every economic incentive to step into the [original trustors'] shoes and protect his interests by assuming the [first] trust deed obligation."]; Bernhardt, Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 2014 supp.) § 2.99 [trustee's deed conveys the property subject to all senior liens on title].)

U.S. Financial advances several arguments in response to LnR's appeal. It says it was not a *grantee*, i.e., it did not purchase the property directly from the Wilsons. It also points out there was no privity of contract between it and the Wilsons, but that they were "complete strangers." Finally, it argues it did not sue to stop a foreclosure sale, but purchased at a trustee's sale.

Though it was not personally obligated on the Peterson deed of trust, there is no dispute that U.S. Financial purchased the property subject to that senior trust deed, and thus, to protect its interests in the property, it would have had to pay that obligation if it was not invalidated. U.S. Financial essentially stood in the Wilson's shoes when it asserted its challenges to the senior Peterson deed of trust akin to the son in *Exarhos v. Exarhos*, *supra*, 159 Cal.App.4th 898, and thus we conclude that relationship, and U.S.

28

Financial's obligations under the Peterson trust deed, justifies the enforcement of the contractual attorney fees provisions against it, entitling LnR to recover its attorney fees.

DISPOSITION

The order is affirmed to the extent it denies the attorney fees motion of Bryan Hynek, Gayl Hynek, Polo Investments Funds, LLC, Polo Investments Fund No. 1, LLC, and Coast Capital Income Fund, LLC.  The order is reversed as to LnR Group, Inc.  The matter is remanded and the superior court directed to enter a new order granting LnR Group, Inc.'s motion for attorney fees.  The parties shall bear their own costs on appeal.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

29